UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at COVINGTON


CIVIL ACTION NO. 09-201-GWU


DARLENE CAMPBELL,                                               PLAINTIFF,


VS.                          **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                      DEFENDANT.


**INTRODUCTION**

        Darlene Campbell brought this action to obtain judicial review of an

unfavorable administrative decision on her application for Disability Insurance

Benefits.  The case is before the court on cross-motions for summary judgment.

**APPLICABLE LAW**

        The Commissioner is required to follow a five-step sequential evaluation

process in assessing whether a claimant is disabled.

> 1.      Is the claimant currently engaged in substantial gainful activity?
>         If so, the claimant is not disabled and the claim is denied.
>
> 2.      If the claimant is not currently engaged in substantial gainful
>         activity, does he have any "severe" impairment or combination
>         of impairments--i.e., any impairments significantly limiting his
>         physical or mental ability to do basic work activities?  If not, a
>         finding of non-disability is made and the claim is denied.
>
> 3.      The third step requires the Commissioner to determine
>         whether the claimant's severe impairment(s) or combination of
>         impairments meets or equals in severity an impairment listed

1

in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.    At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.    If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

09-201  Darlene Campbell

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. <u>Cf. Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. <u>Jones</u>, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

<u>Duncan v. Secretary of Health and Human Services</u>, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  <u>Harris v. Secretary of Health and Human Services</u>, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. <u>Id.</u>  Accord, <u>Johnson v. Secretary of Health and Human Services</u>, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  <u>Gooch v. Secretary of Health and Human Services</u>, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, <u>Hale v. Secretary of Health and Human Services</u>, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting

most of the time with some pushing and pulling of arm or leg controls; by definition,

a person capable of this level of activity must have the ability to do substantially all

these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having

the capacity to lift no more than ten pounds at a time and occasionally lift or carry

small articles and an occasional amount of walking and standing.  20 C.F.R. §

404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly

diminishes his capacity to work, but does not manifest itself as a limitation on

strength, for example, where a claimant suffers from a mental illness . . .

manipulative restrictions . . . or heightened sensitivity to environmental

contaminants . . . rote application of the grid [guidelines] is inappropriate . . ."

Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional

impairment is significant, the Commissioner may still use the rules as a framework

for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e);

however, merely using the term "framework" in the text of the decision is insufficient,

if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid.

In such cases, the agency may be required to consult a vocational specialist.

Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial

evidence to support the Commissioner's decision may be produced through reliance

6

on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Campbell, a 44-year-old former recreational aide and stock clerk[1] with a high school education,[2] suffered from impairments related to diabetes mellitus, bilateral rotator cuff tear and right shoulder arthritis, and being status post left rotator cuff repair.  (Tr. 16, 21-22). Problems with obesity, bilateral plantar fasciitis, hypertension and gastric and duodenal ulcers were found to be non-severe.  (Tr. 16).  Despite the plaintiff's impairments, the ALJ determined that she retained the residual functional capacity to perform a restricted range of light level work.  (Tr. 18).  Since the claimant was found to be able to return to her past relevant work as a recreational aide as well as perform a significant number of jobs in the national economy, she could not be considered totally disabled.  (Tr. 21-23).

---

[1] The plaintiff has continued to work part-time as a stock clerk at the Xavier University Bookstore since alleging she became disabled as of January 1, 2005.  (Tr. 407).

[2] The claimant indicated on the Disability Report that she completed twelfth grade. (Tr. 117).  However, she denied being a high school graduate at the administrative hearing and stated she only went to the tenth grade and never got a GED.  (Tr. 405-406).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence.  Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

In determining that Campbell could return to her past work as a recreational aide, the ALJ relied heavily upon the testimony of Vocational Expert Stephanie Barnes.  Barnes indicated that this position was light in exertion and unskilled.  (Tr. 436).  The hypothetical question presented by the ALJ included an exertional restriction to light level work, restricted from a full range by such non-exertional limitations as (1) an inability to more than occasionally stoop, kneel, crouch and climb ramps or stairs; (2) an inability to ever crawl or climb ladders, ropes and scaffolds; (3) a need to avoid exposure to unprotected heights; and (4) an inability to more than occasionally reach above shoulder level.  (Tr. 437).  In response, the witness testified that the work as a recreational aide could still be performed.  (Id.).  The ability to perform this work would not be precluded by an inability to ever lift overhead.  (Id.).  The ALJ then presented an alternative hypothetical question including a limitation to sedentary level work, restricted from a full range by such non-exertional limitations as an inability to walk or stand for more than two hours in an eight-hour day in 30 minute intervals with a requirement that the individual be able to sit for five minutes.  (Tr. 438).  The expert reported that all the past work would be eliminated but that a significant number of sedentary level jobs could still

be done.  (Id.).  Therefore, assuming that the vocational factors considered by Barnes fairly characterized the plaintiff's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

The hypothetical factors fairly depicted Campbell's condition.  Dr. Loraine Glaser examined Campbell and noted a diagnostic impression of exogenous obesity, foot pain and insulin dependent diabetes mellitus.  (Tr. 236).  Dr. Glaser opined that the plaintiff was capable of performing a "moderate to marked" amount of sitting, ambulating, standing, bending, pushing, pulling, lifting and carrying heavy objects.  (Tr. 236-237).  She would have no difficulty grasping, reaching and handling objects.  (Tr. 237).  The vocational factors presented to the vocational expert were consistent with this opinion.  Thus, Dr. Glaser supports the administrative decision.

Campbell was treated at the Westside Medical Center in the summer of 2005.  The only restriction upon her activities reported was a need to quit smoking.  (Tr. 296-297).  The ALJ's findings were compatible with this opinion.

Campbell sought treatment at Mercy Franciscan Hospital in September of 2006 due to complaints of diarrhea, nausea and vomiting.  (Tr. 300).  A viral illness was suspected.  (Tr. 301).  More severe functional limitations than those found by the ALJ were not imposed.  (Tr. 298-325).  Thus, this report also does not provide support for the plaintiff's disability claim.

Dr. Leanne Coberly, a treating source, completed a Residual Functional Capacity Questionnaire upon which she identified extremely severe limitations. Among the functional restrictions indicated by Dr. Coberly were a (1) a restriction to sedentary level work; (2) a notation that the plaintiff's pain would "constantly" interfere with her attention and concentration; (3) an inability to sit for more than four hours a day in one-hour intervals; (4) an inability to stand or walk for more than a total of less than two hours a day in one-hour intervals; (5) a need to be able to shift positions at will; (6) a need for two to three unscheduled breaks a day; (7) an inability to more than occasionally twist, stoop, crouch/squat, and climb stairs; and (8) an inability to ever climb ladders. (Tr. 353-357). When these restrictions were considered by the vocational expert, he indicated that no jobs could be performed. (Tr. 439).

The ALJ gave Dr. Coberly's opinion little weight. (Tr. 34). He noted that some of the symptoms cited, such as fatigue, psychological problems, difficulty concentrating and muscle weakness, were not well supported by the doctor's own records. (Id.). The ALJ also noted that Dr. Coberly's limitation concerning standing and walking was inconsistent with the job requirements of Campbell's part-time work at the Xavier University Bookstore. (Id.). Finally, the ALJ cited the contrary opinion of Dr. Glaser as supporting his decision. (Id.).

Campbell argues that the ALJ erred in rejecting the opinion of Dr. Coberly.  The plaintiff asserts that considerable objective medical evidence supports the doctor's opinion.  The claimant relies heavily upon medical evidence pertaining to her shoulder problems.  She notes that the medical record reveals findings of tenderness to palpation of the right shoulder (Tr. 271) and a reduced range of shoulder motion (Tr. 330).  An x-ray revealed AC joint spurring.  (Tr. 346-347).  She notes Dr. Coberly diagnosed shoulder pain due to subacromial spurs and referred her to an orthopedist.  (Tr. 379).  This orthopedist, Dr. James Martens, noted tenderness over the anterolateral shoulder, difficulty and weakness with abduction, and a decreased range of motion. (Tr. 385).  An x-ray revealed some joint space narrowing at the AC joint. (Id.).  An MRI scan revealed mid and anterior rotator cuff tear, posterior rotator cuff tear tendinopathy and mild AC joint arthropathy.  (Tr. 387).  However, Dr. Coberly primarily treated the plaintiff for problems related to diabetes mellitus rather than her shoulder condition.  In completing the Medical Source Statement, the doctor specifically indicated that the claimant's problems related to diabetes and peripheral neuropathy. (Tr. 353).  She did not relate the restrictions to Campbell's shoulder problems. (Tr. 353-357).  As the claimant herself points out, Dr. Coberly referred her to an orthopedic specialist to address the shoulder problems.  Significantly, Dr. Martens, the orthopedist, did not identify any specific functional limitations relating to Campbell's shoulder but prescribed steroids and

physical therapy.  (Tr. 386).  Therefore, this evidence does not support the plaintiff's claim.

Campbell also asserts that objective evidence pertaining to her diabetic neuropathy supports Dr. Coberly's severe restrictions.  The claimant cites Dr. Glaser's physical examination which revealed that "pinprick and light touch are diminished over both feet."  (Tr. 236).  As previously noted, Dr. Glaser assessed far more modest physical restrictions than Dr. Coberly and, so, the court does not see that this evidence is supportive of the plaintiff's claim.  The defendant notes that treatment records from Dr. Coberly fail to document objective evidence supporting her claim relating to diabetic neuropathy but merely record her symptoms and complaints.  (Tr. 248, 265, 277, 351, 379, 383).  Under these circumstances, the undersigned finds no error.

Campbell also disputes the ALJ's finding that her part-time work at the Xavier University Bookstore included standing and walking requirements in excess of Dr. Coberly's restrictions.  The claimant testified that she worked four hours a day and reported she was on her feet all the time.  (Tr. 409).  She later indicated that she rested for five to ten minutes after 30 minutes of standing.  (Tr. 430).  However, the doctor clearly limited standing and walking to less than two hours a day.  (Tr. 354).  Even with these occasional breaks, the time she was required to stand and walk would well exceed Dr. Coberly's limitation with regard to these activities.  Therefore, the court agrees that

a contradiction exists and this was an appropriate ground to discredit the opinion of the treating physician.

The undersigned has considered and rejected all of the arguments presented by Campbell as to why the ALJ erred in rejecting Dr. Coberly's opinion as binding. Therefore, the court finds that the ALJ properly rejected the doctor's opinion.

Campbell notes that Dr. Glaser examined her in February of 2005, only three months after her filing date while Dr. Coberly issued her opinion in May of 2008, a month prior to the administrative hearing, after treating her over the length of the entire time period pertinent to the appeal. The plaintiff asserts that the ALJ should have relied upon the more recent opinion. As previously noted, the court has found that the ALJ had good reason for rejecting Dr. Coberly's opinion. Dr. Glaser clearly saw the claimant during the time period relevant to this action. The ALJ was required to consider all relevant evidence submitted on the claim. 20 C.F.R. § 404.1527(c). Therefore, the ALJ could properly rely upon this opinion of an examining physician once that of the treating source was discredited.

Campbell argues that the ALJ erred by failing to properly consider her psychological problems. The plaintiff notes that Dr. Coberly found her "psychologically less labile" in July of 2007. (Tr. 272). The doctor observed tearfulness on several occasions. (Tr. 268, 277, 351). However, Dr. Coberly specifically indicated that emotional factors did not contribute to the severity of her symptoms and functional

13

limitations.  (Tr. 353).  While a limitation to low stress work was later suggested by Dr. Coberly (Tr. 354), Campbell has presented no evidence that this factor would preclude performance of her past work as a recreational aide even if it were accepted.  She carried the burden of proof to establish that she could not return to her past relevant work.  Dr. Coberly did not refer her for treatment to a mental health professional. Therefore, under these circumstances, the undersigned finds no error.

The ALJ relied upon Campbell's history of noncompliance with her treatment and medication in assessing her credibility.  (Tr. 20).  The plaintiff argues that this action was erroneous because the ALJ failed to consider the reasons for her lack of compliance. The claimant cites her testimony that she had not been able to afford treatment and her medications during most of the time period between 2005 and 2007.  (Tr. 419-420).  In January of 2008, she became part of a program which provided financial assistance with her medications.  (Tr. 416).  The defendant notes that C.F.R. § 404.1530(c), the regulation dealing with the medical noncompliance, does not list financial inability as a good reason for failing to follow prescribed treatment.  The ALJ observed in his denial decision (Tr. 20) that the record revealed a history of noncompliance with recommended medical treatment all the way back to 2003 (Tr. 228).  This was during a period  when the plaintiff was still working full-time and presumably could afford treatment.  (Tr. 406-407).  As previously noted, the claimant continued to work part-time and, so, was not completely without financial resources.  Therefore, the court finds no error.

14

The undersigned concludes that the administrative decision should be affirmed.

A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 29th day of July, 2010.

Signed By:

*G. Wix Unthank*

**United States Senior Judge**